I,CLARENCE E. McMANUS, Judge.
This is an appeal from a trial court’s judgment of December 14, 1998, granting plaintiffs Motion to Amend Qualified Domestic Relations Order to require the Firefighters Pension and Relief Fund for the City of New Orleans (hereafter Fund) to pay an additional $500 a month to Ms. Brenda Delaune to reimburse her for her community interest portion of the pension funds received by her deceased ex-husband and current widow. For the following reasons, we reverse and remand.
Ms. Brenda Delaune was married to decedent, Eugene Harry Morse, on January 26, 1957 in New Orleans, Louisiana. They were divorced on November 12, 1986. Mr. Morse was employed by the New Orleans Fire Department from February 18, 1957 until November 28, 1982. After his retirement, Mr. Morse received certain pension benefits under the administration of the Fund. On February 14, 1985, Mr. Morse filed a written request. ,to the Board of Trustees to re-open his retirement application to cover his pension to a Service-Connected Disability Retirement Benefit. On June 27, 1985, the Board of Trustees informed Mr. Morse that his application would not be re-opened based on the long-established precedent that the form of a firefighter’s petition cannot be changed once a firefighter leaves active service with the New Orleans Fire Department.
Mr. Morse married Ms. Lucille Ann Mó-dica in 1993. On August 25, 1994, Mr. Morse died of sepsis/hepatitis C virus of the liver. Thereafter, Ms. Módica filed for widow’s benefits. On April 14, 1995, the Fund awarded payment of the | ^.decedent’s monthly survivor death pension benefits to Mr. Morse’s second spouse, Ms. Módica, because she proved that her husband’s liver disease resulted from the effects of an injury received by Mr. Morse during the course of discharging his duties as a New Orleans fireman.
On September 26, 1995, Ms. Delaune filed suit against Mr. Morse’s second wife *54 and widow, Ms. Módica, and the Succession of Eugene Morse in order to recover half of the spousal pension benefits that the Fund was paying Ms. Módica. Ms. Delaune prayed that the trial court issue a Qualified Domestic Relations Order (hereafter QDRO) mandating the payment of a sum equal to half of the pension benefits that were currently being paid to Ms. Mó-dica plus the community interest in any retirement benefits paid since the decedent’s retirement from the New Orleans Fire Department. In her petition, Ms. Delaune also filed her descriptive list and requested that the former community which existed between Mr. Morse and herself be partitioned under the provisions of La. R.S. 9:2801.
The trial court held a hearing on Ms. Delaune’s petition on November 29, 1995. On March 26, 1996, the trial court ordered that Ms. Delaune be issued a QDRO in which she be awarded an amount equal to 50% of the spousal benefits payable from the New Orleans Fire Department in addition to cost of living increases. In her reasons for judgment, the trial court found that all of the benefits were earned entirely during the first marriage community. The trial court further noted that Louisiana jurisprudence has recognized the right of the non-employee spouse to participate in the benefits of the participating spouse in an amount equal to the percentage of the benefits earned during the community. The trial court further noted the New Orleans Fire Department Pension Board awarded spousal benefits of $1,682.24 per month based on a work related death and awarded Ms. Delaune half of that amount. On April 16, 1996, the trial court signed an amended judgment to correct a clerical error awarding the benefits Lagainst the Fund instead of the New Orleans Fire Department.
On May 23, 1996, Ms. Módica filed a petition for devolutive appeal for appellate review of the March 26,1996, and April 16, 1996, judgments. The Petition for Appeal was granted on May 29,1996. On November 13, 1996, Ms. Módica filed a Motion to Dismiss the Appeal, stating that she did not want to appeal the March 26, 1996 judgment rendered by the trial court. The trial court granted the motion dismissing the appeal on November 14,1996.
On September 3, 1998, Ms. Delaune filed a Motion to Amend the Qualified Domestic Relations Order. In her Motion to Amend, Ms. Delaune argues that Mr. Morse received $243,704.50 in spousal retirement benefits prior to his death and Ms. Módica received $39, 770.22 from the time of Mr. Morse’s death until the issuance of the original QDRO on April 1, 1996. Ms. Delaune noted it would take 41.66 years for her to be totally reimbursed for her portion of the pension payments already paid to Mr. Morse and Ms. Módica at $500 per month. Ms. Delaune prayed that the court order increase the amount of her spousal benefits award by $500/month accordingly. On December 14, 1998, the trial court granted Ms. Delaune’s Motion to Amend Qualified Domestic Relations Order and ordered that the Fund pay Ms. Delaune an additional $500/month. The $500/month was to be deducted from Ms. Modica’s benefit award for reimbursement for the sums that she and Mr. Morse already received and used. Ms. Módica filed a Petition for Suspensive Appeal on January 12, 1999. In her appeal motion, Ms. Módica states that she is taking an appeal from the trial court judgment rendered on December 14,1998.
Disposition of a pension right involves the recognition of the right of the non-employee spouse to a judgment recognizing his interest in the proceeds from a retirement plan, “if as, and when” they become payable, in the form of a QDRO. Blanchard v. Blanchard, 97-2305 (La.1/20/99), 731 So.2d 175, 180. The term “Qualified Domestic Relations Order” has been defined by our Supreme |4Court as “an order ‘made pursuant to a state domestic relations law (including a community property law) which creates or recognizes the existence of an alternate payee’s *55 right to, or assigns an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan and relates to the provision of alimony payments, or marital property rights to a spouse or former spouse.’ ” Id.
In this case, the trial court’s judgment is not a QDRO. QDRO provisions specifically provide for payment of a pension benefit to an ex-spouse (alternate payee) before the participant elects to retire, but on or after the date on which the participant attains earliest retirement age. The QDRO was not the proper mechanism by which to divide the portion of retirement benefits that each spouse was entitled to because Mr. Morse has already retired and the pension benefits have matured. We further note that Ms. Delaune has filed a partition of the community property. Following termination of the matrimonial regime, if the spouses are unable to agree on a partition of community property, either spouse may institute a proceeding to partition the community property and to settle any claims against each other. La. R.S. 9:2801. Ms. Delaune may settle any claims against Mr. Morse’s estate for her portion of the retirement benefits that Mr. Morse received after their divorce and pri- or to his death by the partition.
Moreover, the benefits already paid to Ms. Morse are not subject to garnishment. LSA-R.S. 11:3111 provides that:
LSA-R.S. 11:3111 Exemption from Seizure and Attachment No portion of the said Fireman’s Pension and Relief Fund shall, before or after its order for distribution is issued by said Board of Trustees to the person or persons entitled thereto under the provisions of this Part, be held, seized, or levied upon, by virtue of attachment, garnishment, execution, or order or decree, or any other process whatsoever, issued out of or by any court, for the payment or satisfaction, in whole or in part, of any debt, damage, claim, judgment, or decree against any beneficiary of such Fund, but shall be exempt therefrom. That the said Fund shall be kept, held, and distributed for no purposes other than those provided for in this Part.
|RClearly, Ms'. Delaune,is not entitled to the portion of benefits already paid to Ms. Módica prior to the' effective date of the QDRO on April 1, 1996. Costs of this appeal are to be paid by Ms. Módica.
For the reasons assigned, we reverse the trial court’s judgment dated on December 14, 1998 and remand for proceedings consistent with this opinion.
REVERSE AND REMAND.
CANNELLA, J„ CONCURS IN THE RESULT.